UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
SEP 2 3 2008


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 08-40029 |
| Plaintiff, | * | MEMORANDUM OPINION |
| | * | AND ORDER RE: REPORT |
| vs. | * | AND RECOMMENDATION |
| | * | ON MOTIONS TO SUPPRESS |
| JUAN MANUEL CARRASCO-RUIZ and PEDRO SALAZAR- SALAZAR, | * | |
| Defendants. | * | |

I.

Defendants were indicted for possession with intent to distribute 5 kilograms or more of a mixture or substance containing cocaine and possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. Defendants filed Motions to Suppress Evidence and Statements (Docs. 38 and 70). An evidentiary hearing was held on the motions on Monday, August 1, 2008, before the Honorable John E. Simko, United States Magistrate Judge. The Magistrate's Report and Recommendation was filed on August 8, 2008. Doc. 78 The Magistrate recommended that Defendant Salazar's Motion to Suppress (Doc. 38) be granted to the extent that statements made in the first three non-Mirandized minutes of the custodial interrogation be suppressed but otherwise denied, and that Defendant Carrasco's Motion (Doc. 70) be denied. Neither Defendant filed objections.[1] This Court adopts the Magistrate's Report and Recommendation with regard to the denial of the suppression of evidence but rejects that portion of the Report and Recommendation which denies suppression of all statements made after the first three non-Mirandized minutes of Defendant Salazar's custodial interrogation.

---

[1] The United States Supreme Court has concluded that although 28 U.S.C. § 636(b)(1)(C) "does not require the [district court] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## DISCUSSION

At around 7:30 a.m. on February 21, 2008, a South Dakota Highway Patrol Officer stopped Defendants on Interstate 90 near exit 263 near Chamberlain after observing the eastbound 2008 pickup in which they were traveling cross the fog line and center line. Defendant Salazar was the driver, but the passenger, Defendant Carrasco owned the truck. Defendant Salazar was questioned in the patrol car. The Highway Patrol Officer had the drug dog run around the truck and the drug dog indicated to the odor of drugs on the front driver's side near the fender well. The truck was then taken to the nearby Department of Transportation garage for a more thorough search which turned up drugs in a hidden compartment. Defendants were arrested and transported to the Brule County Jail where Defendant Salazar gave an incriminating statement to D.E.A. Agent Harvison and D.C.I. Agent Piercy.

Both Defendants argued that 1) there was no probable cause for the stop; 2) there was no basis for conducting a search of the vehicle; 3) that the stop of the suspect vehicle was pretextual; and 4) that the Defendants were illegally detained after the traffic stop had ended. The Magistrate's Report and Recommendation rejected these arguments, and this Court adopts the findings and conclusions of the Magistrate with regard to the above issues and denies the motions to suppress evidence.

The Court has conducted a *de novo* review of the record concerning the statements made by Defendant Salazar during his custodial interrogation in the afternoon of February 21, 2008. In this custodial interrogation, Defendant Salazar was not given the *Miranda* warnings until approximately three minutes into the interrogation. After being read the *Miranda* warnings in English Defendant Salazar advised that he did not completely understand the warning. D.E.A. Agent Harvison then asked Defendant Salazar if he could read Spanish. When Defendant Salazar advised that he could read Spanish Harvison gave him a card with the *Miranda* warnings written in Spanish. Defendant Salazar indicated that he understood what was written on the card and eventually responded that the officers could ask him some questions. At the end of the interview Defendant Salazar asked if he could see a lawyer.

The Court rejects the Magistrate's recommendation that Defendant Salazar's Motion to Suppress be granted only with regard to the first three non-Mirandized minutes of the custodial

interrogation because the Court has concluded that the Magistrate's application of the holding in *Oregon v. Elstad*, 470 U.S. 298 (1985), fails to adequately consider significant factors in the surrounding circumstances and course of police conduct with regard to the interrogation of Defendant Salazar. Based on the circumstances of this case all statements made during the custodial interrogation will be suppressed.

In *Oregon v. Elstad*, law enforcement officers went to the defendant's home with a warrant for his arrest for a burglary. After being asked if he knew why law enforcement was at his home the defendant made an incriminating statement with regard to the burglary. The defendant was transported to the Sheriff's headquarters and was advised for the first time of his *Miranda* rights. After indicating he understood his rights, and wished to speak with the officers, the defendant gave a full statement. The incriminating statement was typed, reviewed by the defendant, read back to him for correction, then initialed and signed by the defendant. *Id.* at 300-301.

The defendant in *Oregon v. Elstad* moved to suppress his oral statement and signed confession, contending that the statement he made at his house "let the cat out of the bag," citing *United States v. Bayer*, 331 U.S. 532(1947), and that the statement tainted the subsequent confession as "fruit of the poisonous tree," citing *Wong Sun v. United States*, 371 U.S. 471(1963). The Supreme Court in *Oregon v. Elstad* noted that *Miranda* warnings need to be administered only after the person is taken into "custody" or his freedom has otherwise been significantly restrained. *See Miranda v. Arizona*, 384 U.S. 436, 478 (1985). The Supreme Court further acknowledged, "Unfortunately, the task of defining 'custody' is a slippery one, and 'policemen investigating serious crimes [cannot realistically be expected to] make no errors whatsoever.'" *Oregon v. Elstad,* 470 U.S. at 309 (quoting *Michigan v. Tucker*,417 U.S. 433, 446 (1974)).The Supreme Court in *Elstad* observed that the unwarned statement in that case arose from a situation in which the officers were acting "not to interrogate the suspect but to notify his mother of the reason for his arrest." In addition, the Court observed that the later reading of the *Miranda* warning was "undeniably complete" and that there was "no question" that the Defendant voluntarily waived his right to remain silent before he incriminated himself. 470 U.S. at 314-315.

The Supreme Court in *Oregon v. Elstad* held that a suspect who has responded to an earlier unwarned but uncoercive questioning and is later given the requisite *Miranda* warnings, is not

disabled from waiving his rights and confessing after he has been given the *Miranda* warnings. In reaching this holding the Court advised as follows:

> The Court today in no way retreats from the bright-line rule of *Miranda*. We do not imply that good faith excuses a failure to administer *Miranda* warnings; nor do we condone inherently coercive police tactics or methods offensive to due process that render the initial admission involuntary and undermine the suspect's will to invoke his rights once they are read to him. A handful of courts have, however, applied our precedents relating to confessions obtained under coercive circumstances to situations involving wholly voluntary admissions, requiring a passage of time or break in events before a second, fully warned statement can be deemed voluntary. Far from establishing a rigid rule, we direct courts to avoid one; there is no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary. The relevant inquiry is whether, in fact, the second statement was also voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements.

470 U.S. at 318 (footnotes omitted).

In *Missouri v. Seibert*, 542 U.S. 600, 611 (2004), the Supreme Court addressed what had become a popular technique of interrogating in successive unwarned and warned phases and the threshold issue of whether in such circumstances the *Miranda* warnings could function effectively. The plurality opinion concluded that "when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Id.* at 613-614 (quoting *Moran v. Burbine*, 475 U.S. 412, 424 (1986)). The plurality opinion in *Missouri v. Seibert* distinguished *Oregon v. Elstad* from the situation it was encountering involving successive unwarned and warned phases of interrogation and listed the following "series of relevant facts" which affect whether *Miranda* warnings given mid-interrogation can be sufficiently effective to accomplish their object: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." 542 U.S. at 615.

4

Defendant Salazar's custodial interrogation involved no pause in time, no change of setting, and no disruption of police personnel between the unwarned and warned phases. D.E.A. Agent Harvison testified as follows regarding the conversation before Defendant Salazar was given the *Miranda* warnings: "We visited a little bit, I was comfortable that I was going to be able to communicate with him in English ... ." However, this Court's review of the audio tape of the interrogation causes this Court to reject such an innocuous characterization of the unwarned interrogation. In the approximate three minutes of the unwarned interrogation, D.C.I. Agent Piercy elicited information from Defendant Salazar which included an acknowledgment that "a bunch of drugs" were found in the pickup and admissions that Defendant Salazar had been paid by Defendant Carrasco to drive the truck. Defendant Salazar also provided information that Defendant Carrasco paid for the gas and food during the trip, and that the two had made a stop in Denver. This information was more incriminating with regard to the existence of a drug operation than the information provided earlier to the state trooper when Defendant Salazar was questioned regarding the destination and purpose of his trip. Furthermore, the content of the unwarned interrogation overlapped with the warned interrogation and the interrogators' questions treated the warned interrogation questions as being continuous with the unwarned interrogation questions.

Although the Eighth Circuit has considered the *Missouri v. Seibert* plurality's criteria in determining the effectiveness of midstream *Miranda* warnings, *see, e.g.,, United States v. Ollie*, 442 F.3d 1135 (8th Cir. 2006), because Justice Kennedy provided the fifth vote and his concurrence resolved the *Missouri v. Seibert* case on narrower grounds than did the plurality, it is his reasoning that rules whether the warned statement must be suppressed. See *Ollie*, 442 F.3d at 1142(citing *Marks v. United States*, 430 U.S. 188, 193(1977)). Justice Kennedy states in his concurrence that he would suppress post-warning statements only where the police intentionally used the two-step interrogation technique to render *Miranda* warnings ineffective. Post-warning statements would then be inadmissible unless the police took curative measures that would ensure that a reasonable person would understand his or her rights. Curative measures could include a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning, or an additional warning that explains the likely inadmissibility of the prewarning custodial statement. 542 U.S. at 621-22 (Kennedy, J., concurring in the judgment).

5

In footnote 12 of the Magistrate's Report and Recommendation the Magistrate concludes that the interrogation in issue was "not a purposeful 'midstream' *Miranda* warning tactic, as was condemned in *Missouri v. Seibert*, 124 S.Ct. 2601 (2004)." In *Missouri v. Seibert*, the interrogating officer testified that he made a conscious decision to withhold *Miranda* warnings, 542 U.S. at 605-606. Although no such admission was made in the case at hand, the absence of such an admission by an interrogating officer does not preclude the application of the holding in *Missouri v. Seibert*. Although the Eight Circuit has held that *Missouri v. Seibert* is not implicated in cases in which the failure to warn was not deliberate, *see, e.g., United States v. Torres-Lona*, 491 F.3d 750, 758 (8th Cir. 2007)(I.C.E. agent testified that he did not believe he was required to administer *Miranda* warnings because he believed the defendant would be processed administratively for deportation and not charged with a criminal offenses), the Eighth Circuit has also opposed interpreting *Oregon v. Elstad* so as to facilitate an "end run around Miranda." *See United States v. Carter*, 884 F.2d 368, 373 (8th Cir. 1989)(custodial nature of interrogation was not unclear to officers, and permitting admission of written confession into evidence would allow police to ignore *Miranda* requirements until after confession was obtained).

The Eighth Circuit acknowledges that evidence of the intent of interrogating officers is rarely available. *See United States v. Ollie*, 442 F.3d at 1142 ("It is unlikely that such direct evidence [as that presented in *Seibert*] will be available in most cases."). Therefore, when a defendant moves to suppress a post-warning statement that he contends was given as part of a question-first interrogation, the prosecution must prove, by a preponderance of the evidence, that the interrogating officer's failure to provide the *Miranda* warnings at the outset of questioning was not part of a deliberate attempt to circumvent *Miranda*. 442 F.3d at 1142-1143. The Government does not suggest that the interrogating officers in this case ever questioned whether Defendant Salazar was in custody during all phases of his interrogation, as he clearly was. The D.E.A. Agent conceded that point at the suppression hearing, and the D.C.I. Agent that questioned Defendant Salazar before the *Miranda* warnings were administered never testified at the suppression hearing. The task of defining "custody" was not slippery in this case and no plausible explanation has been offered for failing to give Defendant Salazar the *Miranda* warnings at the beginning of the interrogation. In addition, there is no evidence that any curative measures contemplated by Justice Kennedy were taken after the

unwarned statements were elicited. Had proper curative measures been taken, the subsequent statement would have been admissible. None having been taken or even attempted, *Missouri v. Seibert* therefore requires the exclusion of all statements made during Defendant Salazar's custodial interrogation. Accordingly,

IT IS ORDERED:

(1) That the Magistrate's Report and Recommendation (Doc.78) is adopted with regard to the denial of the suppression of evidence but rejected with regard to that portion of the Report and Recommendation which denies suppression of all statements made in Defendant Salazar's custodial interrogation;

(2) That Defendant Carrasco's Motion to Suppress Evidence (Doc. 70) is denied; and

(3) That the Defendant Salazar's Motions to Suppress (Doc. 38) is denied with respect to evidence obtained from the stop and granted with regard to all statements made during Defendant Salazar's custodial interrogation.

Dated this 23rd day of September, 2008.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
(SEAL)    DEPUTY